UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEWPARK MALL LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CRGE NEWPARK MALL, LLC, et al.,<br><br>    Defendants. | Case No.  15-cv-0817-PJH<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT IN PART AND DENYING IT IN PART** |

   This is a case alleging breach of a lease agreement and guaranty – specifically, failure to meet certain construction obligations set forth in the lease agreement.

   Plaintiff NewPark Mall, LP ("NewPark"), is a Delaware limited partnership and the owner of the NewPark Mall located in Newark, California.  The partners in the NewPark limited partnership are alleged to be "Delaware entities."  Defendants are an Arizona limited liability company and a Delaware limited liability company – CRGE NewPark Mall LLC ("CRGE" – the Arizona LLC) and Boomtown LLC ("Boomtown" – the Delaware LLC, located in Arizona).

   NewPark alleges that Boomtown was established for the sole purpose of developing a chain of restaurants doing business as "Toby Keith's I Love This Bar and Grill," and that between September and December 2013, Boomtown, "through five different single-purpose entities – all restaurants doing business as Toby Keith's I Love This Bar and Grill ("the Toby Keith tenants") – entered into leases for five different properties owned by Rouse Properties, Inc."  Cplt ¶¶ 12-16.

   In one of these transactions, NewPark and CRGE entered into a lease for property

at the NewPark Mall in September 2013, and Boomtown provided a guaranty. NewPark alleges that it fulfilled its obligations under the lease (delivering the leased premises and paying CRGE $791,600 in tenant improvements), and that CRGE has not met its obligations (the construction of the tenant improvements).

NewPark filed the complaint in this action on February 23, 2015, seeking to terminate CRGE's lease and recover the payments made for tenant improvements which CRGE has failed to use for legitimate construction costs at the leased premises. Plaintiff asserts five causes of action – breach of contract (against CRGE), unjust enrichment (against CRGE and Boomtown), breach of guaranty (against Boomtown), breach of the duty of good faith and fair dealing (against CRGE and Boomtown), and money had and received (against CRGE and Boomtown).

On March 3, 2015, NewPark filed proofs of service, showing service of the summons and complaint on both defendants on February 26, 2015. On April 3, 2015, NewPark requested entry of default as to both defendants, asserting that they had been served but had not responded to the complaint. The clerk entered default on April 7, 2015, and on April 21, 2015, NewPark filed a motion for default judgment as to both defendants. On April 29, 2015, defendants filed a motion to set aside the default, claiming that they had a meritorious defense, that they did not engage in culpable conduct, and that NewPark would not be prejudiced if the default were set aside.

On May 28, 2015, the court granted the motion to set aside the default on the condition that defendants file an answer or other responsive pleading by June 4, 2015. Each defendant did file an essentially identical answer and affirmative defenses on June 4, 2014. On June 9, 2015, the court denied the motion for default judgment.

At the initial case management conference ("CMC") on July 2, 2015, the discovery cutoff date was set for November 27, 2015; the dispositive motions hearing deadline was set for January 27, 2016; the pretrial conference date was set for April 28, 2016; and the trial was set for May 23, 2016.

On October 19, 2015, NewPark filed a motion to compel production of documents,

asserting that defendants had completely ignored its document requests. On October 26, 2015, Brent Phillips, a sole practitioner who was counsel for defendants CRGE and Boomtown, filed a motion to withdraw as counsel. He stated that defendants had not fulfilled their contractual obligations to compensate him for fees and costs he has incurred in this action, despite repeatedly promising to do so, and that as a result, continuing to represent defendants would impose an unreasonable financial burden on him because the fees and costs incurred as of that date were substantial.

Mr. Phillips also asserted that defendants had ceased all communications with him. He contended that he had written and called defendants at least 12 times requesting documents and other materials to respond to NewPark's discovery requests and to comply with defendants' Rule 26 disclosure requirements, and that defendants had responded to none of his calls. He asserted that defendants' failure to communicate with him had made it impossible for him to comply with discovery requests and prepare the defense.

On October 29, 2015, the parties submitted a joint discovery letter attesting to counsel's attempts to meet and confer with regard to the discovery motion. The Magistrate Judge set a telephonic discovery hearing for November 5, 2015, and, following that hearing, ordered defendants to produce all responsive documents by November 12, 2015, and directed that if defendants failed to do so, plaintiff should file a motion for terminating sanctions.

On November 20, 2015, the court granted Mr. Phillips' motion to withdraw as counsel for defendants, conditional on his agreement to accept service of documents and to forward them to defendants – which as LLCs cannot appear except through a licensed attorney – until new counsel was substituted in or defendants' default was entered. The court also set a further CMC for December 17, 2015, directing that defendants would be required to appear through counsel.

On December 4, 2015, NewPark filed the present motion to strike defendants' answers and to enter default judgment in the amount of $16,172,914.87, based on

defendants' failure to provide any discovery responses.

On December 17, 2015, the court held the further CMC.  Defendants did not appear.  NewPark stated that defendants had still not responded to the document requests.  Defendants' opposition to the present motion was due on December 18, 2015, but none was filed.

## DISCUSSION

A.   Legal Standard

The court may sanction a party that fails to obey a discovery order by striking pleadings, staying further proceedings pending compliance, or terminating the action by default of dismissal.  See Fed. R. Civ. P. 37(b)(2)(A)(iii)-(iv).

Since dismissal and default are such drastic remedies, they may be ordered only in extreme circumstances – i.e., where there is willful disobedience or bad faith.  See In re Exxon Valdez, 102 F.3d 429, 432 (9th Cir. 1996).  "A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe." Conn. Gen'l Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007).  "Only 'willfulness, bad faith, and fault' justify terminating sanctions."  Id. (quoting Jorgensen v. Cassiday, 320 F.3d 906, 912 (9th Cir. 2003)).

All that is required to show willfulness or bad faith is "disobedient conduct not shown to be outside the control of the litigant."  Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993).  An explicit finding of "willful" noncompliance is necessary. It will not be inferred from findings that the noncompliance was "unexcused" or "unjustified." Schwarzer, et al., Fed. Civ. Proc. Before Trial (2015 ed.) § 11:2421.

Once the court finds that discovery violations are "due to willfulness, bad faith, or fault of the party," it weighs the following five factors in determining whether to impose terminating sanctions:  (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions (including whether the court has considered lesser

sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions). See Hester v. Vision Airlines, Inc., 687 F.3d 1162, 1169-70 (9th Cir. 2012).

The first two factors generally favor terminating sanctions for violations of discovery orders, while the fourth cuts against such sanctions. Thus, the outcome usually depends on the third and fifth factors. See Computer Task Group, Inc. v. Brotby, 364 F.3d 1112, 1115 (9th Cir. 2004). Another important factor is whether the court previously warned the party that terminating sanctions were in the offing if it did not comply with the discovery order, and some courts require such a judicial warning. See U.S. ex rel. Wiltec Guam Inc. v. Kahaluu Const. Co, Inc., 857 F.2d 600, 605 (9th Cir. 1988).

B.   Plaintiff's Motion

In the motion, NewPark argues that terminating sanctions are warranted under Rule 37(b)(2) and the court's inherent power, and seeks a default judgment in the total amount of $16,172,914.87.

Here, while a default was entered against defendants in April 2015 for failure to respond to the complaint, the court granted defendants' request in May 2015 to set aside the default, conditional on their filing a response to the complaint, which they did. While a default ordinarily will not be entered where the defendant has responded to the complaint, Rule 37 specifically provides that a court may sanction a party that fails to obey a discovery order by striking pleadings, staying further proceedings pending compliance, or terminating the action by default of dismissal. See Fed. R. Civ. P. 37(b)(2)(A)(iii)-(iv). That is, even though a defendant has appeared in the action, the court has the power to strike the defendant's answer and render a default judgment as the ultimate sanction for refusal to obey discovery orders. See Dreith v. Nu Image Inc., 648 F.3d 779, 786 (9th Cir. 2011).

Here, NewPark argues that defendants' discovery violations are clearly due to willfulness and bad faith, as it is "disobedient conduct not shown to be outside the control

1  of" defendants.  Thus, NewPark asserts, the court should weigh the five factors listed
2  above, and should find that terminating sanctions are warranted.
3  NewPark asserts that defendants' complete failure to abide by their discovery
4  obligations and to proceed with an orderly resolution of this case satisfies the five-factor
5  test for terminating sanctions.  NewPark contends that under the circumstances, it is
6  clear that any less drastic sanctions would be ignored, and would only serve to further
7  delay the expeditious resolution of this litigation, prejudicing NewPark and its ability to
8  pursue the judgment it is entitled to and disrupting the court's efforts to manage its
9  docket.  NewPark also notes that MEJ warned defendants that if they failed to comply
10 with the discovery order, the court would invite NewPark to file a motion for terminating
11 sanctions.
12 NewPark seeks entry of default judgment in the amount of $16,172,914.87, as
13 follows:
14 ● $791,600 in Tenant Allowance ("TA") payments that were made to
15 Defendants but clearly not used for the purposes intended;
16 ● $103,153.08 in liens that have been filed against the property based on
17 defendants' failure to pay contractors and subcontractors;
18 ● $791,720.00 in costs associated with construction necessary to put the
19 subject premises in a condition to be marketed for re-leasing;
20 ● $658,067.80 in rental payments due and owing under the contract;
21 ● $13,741,971.33 in future rental payments due and owing under the
22 contract;
23 ● $86,002.66 in attorneys' fees incurred by plaintiff in this matter and in the
24 unlawful detainer and lien foreclosure actions filed in State Court; and,
25 ● $400 in court costs.
26 NewPark has supported its request for the $16,172,914.87 judgment with two
27 affidavits – one by Jason Kislin, a partner at Greenberg Traurig, LLP, counsel for
28 NewPark in this action; and one by Christina Molinaro, the General Manager at NewPark.

Mr. Kislin states in his declaration that Greenberg Traurig was hired as "national coordinating counsel to over see the multiple cases filed by certain single purpose entities owned by Rouse Properties, Inc., against Boomtown Entertainment, LLC, and its related CGRG single-purpose entities."  He claims that these cases all arise from breaches of various lease and guaranty agreements by Boomtown and the CRGE entities.  Kislin Decl. ¶ 1.

Mr. Kislin states further that with regard to NewPark, defendants' failure to live up to their obligations under the lease has necessitated the filing of the present action, and an unlawful detainer action (against the same defendants), and has also involved NewPark in a series of construction lien foreclosure actions filed by the contractors and subcontractors that worked on the project at NewPark Mall.  Mr. Kislin has attached time sheets that he claims reflect the attorneys' fees and costs incurred by Rouse Properties in prosecuting this action and "the related state court proceedings."

The total fees and costs claimed are $86,002.66 (per Mr. Kislin).  Broken down, that comes to $81,747.22 in fees and $4,255.44 in costs.  However, as noted above, NewPark's motion states that it is seeking $86,002.66 in "attorneys' fees," plus $400 in "court costs" (presumably the filing fee, though NewPark does not specify).

Ms. Molinaro states that pursuant to the lease between CRGE and NewPark, CRGE was responsible for completing construction of the space, and NewPark was required to pay Tenant Allowance (or "TA") money to CRGE.  She attaches documentation (Exh. 1) that she claims shows deposit of the first two TA payments into a Boomtown bank account.  The payments were for $395,800 each (or a total of $791,600).  In addition, she attaches documentation (Exh. 2) of $103,153.08 in construction liens that were filed against the property by various subcontractors who have not been paid for their work.

Finally, Ms. Molinaro asserts that NewPark has not yet secured another tenant for the space.  She claims that it will take $791,720 to put the premises in shape to rent to another tenant.  She bases this on $40 per square foot, which she says is on the low end

1   of the $100/sq. foot it "could" cost to make the space leasable to some tenants.

2         She also attaches a spreadsheet (Exh. 3) that she claims details the amount of
3   rent due through November 30, 2015 – $658,067.80.  In addition, she claims that the
4   amount of rent due from December 1, 2015, through the expiration of the lease (which
5   she states is February 28, 2015, but which the spreadsheet (Exh. 3) shows as February
6   28, 2029) is $13,741,971.33.

7         The court finds that terminating sanctions are warranted, and GRANTS the motion
8   for default judgment on that basis.  However, as the court explained to counsel at the
9   hearing on the motion, NewPark has not sufficiently proved up its damages – at least as
10  to the total amount it is seeking.

11        First, with regard to the entitlement to the default judgment, willfulness and bad
12  faith have been established.  Defendants have provided no responses to NewPark's
13  discovery requests, despite having been ordered to do so by the court, and they have
14  made no showing that their failure to comply was for reasons outside their control.
15  Indeed, they did not file any response to the present motion, and according to the
16  declaration of their former counsel filed in support of his request to withdraw as counsel,
17  they did not even provide him with the necessary documents or information so that he
18  could prepare any responses.

19        As for the five factors, with regard to the first factor, the public interest in
20  expeditious resolution of cases would be best served by striking defendants' answers and
21  entering a default.  Defendants are no longer represented by counsel, and as LLCs, they
22  cannot represent themselves.  There is no indication in the record that they have made
23  any effort to obtain counsel since the motion to withdraw was granted.  In addition, the
24  complaint was filed in February 2015, and the discovery cut-off and dispositive motions
25  hearing deadlines have passed.

26        With regard to the second factor, the court's interest in managing its docket would
27  be best served by striking defendants' answers and entering the default.  Defendants'
28  behavior has necessitated the filing, briefing, and hearing on a motion to withdraw as

United States District Court
Northern District of California

counsel, a motion to compel production of documents, and the present motion for default judgment. In addition, the court has conducted two case management conferences. The case is more than 10 months old, and essentially nothing has happened to move it forward – not even a motion to dismiss for failure to state a claim. The need to devote time and energy to work on these motions and hearings has interfered with the court's ability to fairly manage its docket so as to benefit all litigants with cases pending on that docket.

With regard to the third factor, it is true that defendants will be prejudiced if a default judgment is entered against them – and that this factor weighs against the imposition of sanctions – but given that defendants are responsible for the violation of the court's discovery order, any prejudice can be viewed only as self-inflicted.

With regard to the fourth factor, the public policy favoring disposition of cases on their merits also weighs against the imposition of sanctions, but again, NewPark has done everything within its power to obtain a resolution on the merits, while defendants have done everything possible to ensure that the merits of the case are never reached.

With regard to the fifth factor, the court previously explicitly advised defendants that failure to comply with discovery well might result in the filing of a motion for default judgment. The court did not previously impose less drastic sanctions, but under the circumstances, there do not appear to be any less drastic sanctions available. Defendants did not respond to the discovery requests; they were ordered to do so, but still failed to respond; the discovery cutoff date has passed; and defendants provided no good cause for their failure to comply with the discovery requests and have not even made any effort to respond to the arguments made by NewPark in this motion.

Thus, the first two factors strongly favor terminating sanctions, the third and fourth factors slightly weigh against terminating sanctions, and the fifth factor favors terminating sanctions.

Once the court has determined that entry of a default judgment is warranted, it must determine the appropriate remedy. See Geddes v. United Fin. Grp., 559 F.2d 557,

1  560 (9th Cir. 1977). "A default judgment must not differ in kind from, or exceed in
2  amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Further, a plaintiff
3  seeking default judgment must "prove up" the amount of damages it is claiming. Philip
4  Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003). This is
5  where NewPort's motion falls somewhat short.

The complaint seeks recovery of the $791,600.00 in TI payments that NewPark paid to CRGE, pursuant to the lease agreement. Cplt ¶¶ 17, 23, 26. That is the only specific amount of damages pled in the complaint. The prayer for relief also seeks a judicial declaration that CRGE is in breach of the lease, that Boomtown is in breach of the guaranty, and that the lease is terminated; "damages to be determined at trial;" and an award of "legal fees and costs of suit" to NewPark. NewPark has established that it paid the $791,600.00, and that CRGE has failed to complete the work on the project so that it could meet the mandatory "Opening Date" (opening of the restaurant), a requirement of the lease. See Cplt ¶¶ 38-40. Thus, the $791,600.00 can be awarded in damages.

Apart from the $791,600.00 in TI payments, NewPark seeks recovery of the amount it paid to discharge certain mechanics liens against the property. The lease provides that "Landlord" (NewPark) can recover money paid to discharge mechanics liens (here, $103,153.00) plus "interest" and "all costs and expenses, including reasonable attorneys' fees incurred by Landlord" and that that amount "shall be due and payable by Tenant to Landlord as additional rental . . . ." Lease, Art. 14. NewPark has established that the amount of the mechanics liens was $103,153.00, and the court finds that that amount can be awarded in damages for breach of contract.[1]

As for the $791,720.00 that NewPark seeks for "costs associated with construction necessary to put the subject premises in a condition to be marketed for re-leasing,"

---

[1] The court notes, however, that while the complaint makes reference to possible mechanics liens filed against the property, it does not specify any particular amount owing or identify all the subcontractors involved. That information appears only in Exh. 2 to the Molinaro Declaration.

1  NewPark does not cite any provision of the lease or guaranty that would entitle it to
2  damages for this additional construction, and there is nothing pled in the complaint to
3  support this request, apart from vague references to NewPark having completed
4  "Landlord Work" prior to turning over the premises to CRGE.  See Cplt ¶¶ 8, 24.
5  However, there is no allegation that NewPark is seeking to recover the amount it has
6  actually spent (not specified) as part of its damages.

7  NewPark now argues in its motion that as a condition of the lease, and prior to
8  turning over the premises to CRGE, it "completed demolition and construction work on
9  what was fully leasable space in the amount of $704,685" and that as a result of
10  defendants' failure to comply with the terms of the lease and their "abandonment of the
11  property in a complete state of disrepair," it will be "forced to incur additional construction
12  costs to put the property back into a position to be re-leased."  In support, NewPark cites
13  the Molinaro Declaration at ¶ 7.  However, apart from this statement in the declaration,
14  there is no evidence that NewPark spent that amount, and no citation to the lease
15  agreement supporting its attempt to recovery the amount it claims (per Ms. Molinaro) will
16  be necessary to put the premises back into position to be re-leased ($791,720.00).  As
17  NewPark has not established its entitlement to this amount, this part of the claimed
18  damages is not recoverable.

19  With regard to the attorneys' fees and costs, there are several problems.  Per Mr.
20  Kislin, NewPark is seeking $81,747.22 in attorneys' fees and $4,255.44 in costs (a total
21  of $86,002.66).  However, as noted above, NewPark's motion states that it is seeking
22  $86,002.66 in "attorneys' fees," plus $400 in "court costs" (presumably the filing fee,
23  though NewPark does not specify).  Thus, NewPark appears to have added the litigation
24  costs to the attorney's fees, and is referring to the entire amount as "attorney's fees."

25  It is not entirely clear that all of NewPark's claimed fees are recoverable in this
26  case – in particular, the fees that Mr. Kislin refers to as having been incurred in a state
27  court action.  Apart for the fees for work performed in connection with discharge of
28  mechanics liens (contemplated in lease agreement as indicated above), the court cannot

11

locate any basis for recovery of the remaining fees.  If there is a provision in the lease supporting an award of fees for all the work performed in this case (apart from work on discharge of mechanics liens), NewPark should have pointed it out to the court.[2]

As for the $4,255.44 in costs, NewPark is evidently attempting to recover all its litigation expenses, including costs that it would not be able to recover as a prevailing party under 28 U.S.C. § 1924 and Civil Local Rule 54.  Most of these costs are not allowable, and the request for costs needs to be resubmitted to the clerk in accordance with the Civil Local Rules, after judgment is entered.

As for the amount NewPark is seeking to recover for past and future rent, the discussion in the Molinaro Declaration is somewhat vague.  It may be that the amounts claimed are accurate, but as the court explained to counsel at the hearing, the basis of NewPark's calculation of the past and especially the future rental payments is unclear.

The lease recites amounts due for "minimum annual rent," see Lease, Reference Provision 1.07; and Lease, Art. 4; and for "Operating Expenses," Reference Provision 1.22.  The "spreadsheet" attached as Exh. 3 to the Molinaro Declaration shows amounts for "future rent" that appear to match up with the amounts shown in Reference Provision 1.07 for "minimum annual rent."  Ms. Molinaro states that, per the lease (no citation to specific provision), NewPark has applied a discount to future rental payments, but the amounts claimed appear to match up with the amounts shown in Reference Provision 1.07, with no evidence of any discount.

As the court explained at the hearing, given that $14+ million (i.e., the bulk) of the total amount NewPark is trying to recover consists of those past and future rental payments, NewPark needed to do a better job of explaining the calculations – particularly considering that NewPark will presumably be renting out the space to a new tenant and

---

[2] Furthermore, Mr. Kislim's references to "Rouse" prosecuting the action are unclear, as Rouse Properties, Inc. is not a party in this action, and the only reference to "Rouse" in the complaint is a statement that Rouse Properties is the "owner" of the five locations where defendants were allegedly constructing Toby Keith restaurants.

thus any recovery of "future rent" could be viewed as double recovery. At the hearing, the court therefore directed counsel to file a supplemental declaration addressing these deficiencies, no later than 30 days from the date of the hearing – or by February 12, 2016.

No supplemental declaration was filed by that deadline. On the off-chance that one would still be forthcoming, the court waited two additional weeks before issuing this order. It appears, however, that NewPark has nothing to add to its original briefing, as no declaration has been filed. Upon reflection and further review of the papers, the court finds that NewPark has adequately established a basis for recovery of past-due rent only.

Accordingly, the court GRANTS the motion, but NewPark's recovery will be limited as follows: NewPark shall recover from defendants $791,000.00 in Tenant Allowance ("TA") payments; $103,153.00 in money paid to discharge mechanics liens; $658,067.80 in past-due rent through December 1, 2015; and $81,747.42 in attorney's fees, for a total recovery of $1,633,968.22. NewPark may submit a cost bill to the clerk for whatever allowable costs it is seeking.

## CONCLUSION

In accordance with the foregoing, plaintiff NewPark's motion to strike defendants' answer and for default judgment is GRANTED, and NewPark shall recover from defendants the sum of $1,633,968.22.

**IT IS SO ORDERED.**

Dated: February 25, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge